IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL PRIEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-cv-00557 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Knowles |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Defendant United States of America's Motion to Dismiss ("Motion"). (Doc. No. 11.) Plaintiff Michael Priest filed a Response in Opposition (Doc. No. 13), to which the United States filed a Reply (Doc. No. 17). For the reasons stated below, the Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

### I. BACKGROUND[1]

Plaintiff underwent a colonoscopy procedure on or about June 9, 2008,[2] at the Alvin C. York Veteran Affairs Facility in Murfreesboro, Tennessee. On or about February 9, 2009, the Department of Veteran Affairs ("VA") sent form letters to approximately 6,387 veterans, including Plaintiff. The letter indicated that from April 23, 2003, through December 1, 2008, all colonoscopy procedures carried the risk of exposure to potentially deadly diseases, waste, and bodily fluids. The possible exposure was caused by the use of an incorrect valve during procedures, and the tubing attached to the endoscopic scope may not have been properly cleaned between patients.

---

[1] All facts are taken from Plaintiff's Complaint (Doc. No. 1) unless otherwise noted.
[2] Plaintiff's Complaint alleges that he underwent the procedure on October 4, 2006; however, Plaintiff has admitted that the date was misstated in the Complaint and that the correct date is June 9, 2008 (Doc. No. 13 at 2).

1

After receiving the VA's letter, Plaintiff underwent blood tests to check for infection. On March 13, 2009, a VA employee notified Plaintiff that he was infected with Hepatitis B and HIV. Two weeks later, Plaintiff was informed that the results were incorrect.

Plaintiff timely filed an administrative claim with the VA on July 14, 2010. The VA denied his claim on December 10, 2010. Plaintiff subsequently filed this suit pursuant to 28 U.S.C. § 2675 on June 10, 2011. Plaintiff alleges negligence, negligent infliction of emotional distress, and *res ipsa loquitur*. The United States filed its Motion to Dismiss on July 29, 2011. (Doc. No. 11.) Plaintiff filed a Response in Opposition on August 12, 2011 (Doc. No. 13), and the United States filed a Reply on September 6, 2011 (Doc. No. 17).

## II.    LEGAL STANDARD

The United States' Motion to Dismiss seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, under Rule 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may be presented as a facial or factual challenge. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 2007)). A facial attack challenges the sufficiency of the pleading, and all allegations made by the plaintiff must be accepted as true. *Id.* On the other hand, if the defendant brings a factual attack, the facts alleged in the complaint are not presumed to be true. *Id.* A court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* The plaintiff bears the ultimate burden of establishing subject-matter jurisdiction to survive a Rule 12(b)(1) motion. *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011).

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court recently clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id*. (quoting *Twombly,* 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

### III. ANALYSIS

#### A. The Federal Tort Claims Act

The Federal Tort Claims Act (FTCA) provides the exclusive remedy for recovery against the United States for common law torts committed by federal employees acting within the scope of their employment. The FTCA confers jurisdiction on district courts over civil actions for injury caused by negligent or wrongful acts of Government employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable. 28 U.S.C. § 1346(b)(1). The FTCA adopts the law of the state in which the alleged tortious act or omission occurred. *Id.*; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991). The FTCA mandates that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Accordingly,

there is no subject-matter jurisdiction over actions against the United States if, under like circumstances, suit would not be permitted against a private individual. *See Young v. United States*, 71 F.2d 1238, 1244 (6th Cir. 1995); *Friedman*, 927 F.2d at 261.

There exists within the FTCA an exception to the United States' liability for discretionary functions. 28 U.S.C. § 2680(a). Under the exception, the sovereign immunity of the United States is not waived for claims "based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* The Supreme Court has developed a two-part test for determining whether the discretionary function except applies. *Edwards v. Tenn. Valley Auth.*, 255 F.3d 318, 322 (6th Cir. 2001) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). First, a court must determine whether the challenged act or omission "'violated a mandatory regulation or policy that allowed no judgment or choice.'" *Id.* (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). If the action of the Government is constrained by a mandatory regulation or policy, the discretionary function exception does not apply because there was no element of judgment or choice. *Id.*

Once a court concludes that the allegedly tortious conduct involved judgment or choice, it must "determine whether 'the challenged conduct is of the kind that the discretionary function exception was designed to shield.'" *Id.* at 324 (quoting *Rosebush*, 199 F.3d at 441). The Sixth Circuit explained:

> In enacting FTCA § 2680(a), Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy. Thus, where there is room for policy judgment and decision, there is discretion of the sort protected by Section 2680(a).

*Rosebush*, 199 F.3d at 441 (internal quotations and citations omitted). The Sixth Circuit outlined three types of decisions to which the discretionary function exception typically applies: (1) the

4

proper response to hazards, (2) whether and how to make federal lands safe for visitors, and (3) whether to warn of a potential danger. *Id.* at 443.

 B. *Discussion*

  Plaintiff's claims relate to three interrelated but distinct events: his colonoscopy, his receipt of the VA form letter, and his alleged misdiagnosis. The United States urges that the discretionary function exception of the FTCA applies to Plaintiff's claims as they relate to his receipt of the VA form letter. (Doc. No. 12 at 11.) Judge Campbell, in ruling on a claim arising out of the same facts as the instant case, found that the discretionary function exception applies to the letter. *Mayo v. United States*, 785 F. Supp.2d 692, 697 (M.D. Tenn. 2011). Plaintiff does not dispute the application of the discretionary function exception. (Doc. No. 13 at 1.) Plaintiff therefore concedes that the Court does not have subject-matter jurisdiction over his FTCA claims related to the letter, and they must be dismissed under Federal Rule of Civil Procedure 12(b)(1). However, Plaintiff asserts that receiving the letter is "not the claim for which [he] seeks compensation." (*Id.*) Rather, Plaintiff states that his claims concern his alleged misdiagnosis of Hepatitis B and HIV and his resulting emotional distress. (*Id.*) Plaintiff also discusses facts alleging negligence in the administration of his colonoscopy. (*Id.* at 1-2.) The Court will therefore address the United States' arguments regarding those facts.

  The United States argues that Plaintiff's claim of negligence in performing the colonoscopy "sounds in medical malpractice," despite Plaintiff's assertion in the Complaint that he does not allege a medical malpractice claim. (Doc. No. 12 at 16.) The United States asserts that, therefore, the Tennessee Medical Malpractice Act (TMMA) governs Plaintiff's claim. (*Id.* at 17.) The United States then concludes that the claim must fail because Plaintiff has not met the TMMA's requirement of including with the Complaint a certificate of good faith. (*Id.* at 20.)

5

In *Mayo*, Judge Campbell agreed with the United States that the TMMA and the good faith certificate requirement applies to negligence claims relating to the colonoscopies performed at the VA facility during the identified time period. 785 F. Supp. 2d at 696. Plaintiff seems to concede that the certificate of good faith requirement applies to his case, but argues that his case falls within an exception to the requirement. (Doc. No. 13 at 5.)

Under the TMMA, the failure of a plaintiff to file a certificate of good faith that the plaintiff or counsel has consulted with a competent medical expert renders a malpractice action subject to dismissal with prejudice. Tenn. Code Ann. § 29-26-122(a),(c). The purpose of the requirement is "to reduce the number of meritless claims which [a]re filed." *Howell v. Claiborne & Hughes Health Ctr.*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *16 (Tenn. Ct. App. June 24, 2010); *see also Jenkins v. Marvel*, 683 F. Supp. 2d 626, 639 (E.D. Tenn. 2010) ("The [requirement] is designed to reduce the number of frivolous lawsuits filed in Tennessee each year . . . by requiring early evaluation and streamlined disclosure of medical records."). However, a plaintiff can avoid dismissal with a showing that the omission was due to the failure of the medical provider to timely provide records or a showing of extraordinary cause. *Id.* Plaintiff argues that his failure to file a certificate is due to the VA's failure to provide information that would assist each patient in determining whether his colonscopy was preceded by a procedure on an infected patient. (Doc. No. 13 at 5.) Plaintiff asserts that his inability to obtain certain information from the VA has prevented him from securing an expert opinion on the key facts. (*Id.* at 6.)

The Court finds scant law from Tennessee courts applying § 29-26-122(a) that is relevant to the current case. In *Mayo*, Judge Campbell ruled that the plaintiff's failure to file a certificate of good faith precluded a medical malpractice claim for the potentially negligent colonoscopies.

6

785 F. Supp. 2d at 697. Judge Campbell did not address whether the plaintiff had argued for an exception to the requirement. Unlike Plaintiff, however, the plaintiff in *Mayo* had an existing, documented infection that may have resulted from one of the compromised colonoscopies. Judge Campbell nevertheless dismissed the claim, which emphasizes to the Court the importance of the requisite certificate of good faith.

On the other hand, in another case from this District, Judge Trauger held that the defendant's failure to provide the plaintiff with full medical records excused the plaintiff from filing a certificate. *Truth v. Eskioglu*, 781 F. Supp. 2d 630, 634 (M.D. Tenn. 2011). Judge Trauger repeatedly emphasized, however, that the plaintiff had consulted with a doctor before filing suit, and was only waiting in good faith for the defendant to produce the records. *Id.* at 635. The plaintiff filed an affidavit swearing to the consultation and to the doctor's belief that the malpractice claim was valid. *Id.* The affidavit was supported by a letter from the doctor asserting that there existed strong evidence of malpractice but that the doctor was not willing to write a good faith certificate until he was able to review the plaintiff's entire medical record. *Id.* Further, the plaintiff had submitted a written request for the records in compliance with the statute with which the defendant had failed to comply. *Id.* at 634. Judge Trauger concluded that the plaintiff had shown good cause for failing to file a certificate, and that the evidence indicated the case was not the type of frivolous suit § 29-26-122(a) is intended to prevent. *Id.* at 635. Even in light of this conclusion, however, Judge Trauger did not entirely excuse the requirement; instead, she granted the plaintiff an extension to file a valid certificate of good faith. *Id.* at 635-36.

The considerations on which Judge Trauger based her ruling are not present in the current case. There is no evidence here that Plaintiff has consulted with an expert at all, nor is there

7

"strong evidence" of malpractice. Plaintiff argues that the VA's "failure to provide information – who was exposed, when and the like" – preclude Plaintiff from obtaining an expert opinion. The Court assumes that Plaintiff would want to know which patients who underwent colonoscopy procedures were previously diagnosed with infectious diseases, and when their procedures were administered. This information is protected by medical privacy laws, and Plaintiff could not have reasonably expected the VA to release it to a third party. Further, Plaintiff has not actually developed an infectious disease to date. There is insufficient evidence for the Court to find that extraordinary circumstances excuse Plaintiff's failure to file a good faith certificate, or to conclude that this is not the kind of frivolous lawsuit that the good faith certificate requirement was intended to prevent.

The same analysis applies to Plaintiff's failure to file a good faith certificate relating to his claims of an alleged misdiagnosis. Although the United States argues that Plaintiff was not, in fact, conclusively misdiagnosed, the Court must construe all facts in Plaintiff's favor at this stage of litigation and assume that he was led to believe for two weeks that he had contracted infectious diseases. However, Plaintiff has not even argued for the application of the TMMA's exceptions to the certificate requirement for the misdiagnosis. Contrary to the colonoscopy procedures, the tests and their subsequent interpretation are relevant only to Plaintiff, and it would not require obtaining other patient's confidential medical records in order to consult with an expert prior to filing suit. The Court assumes, and Plaintiff has not refuted, that Plaintiff would be able to obtain his own relevant records related to the testing. Plaintiff has neither offered any explanation for why he was unable to do so nor alleged that the VA has refused to provide them. Accordingly, Plaintiff's claims must be dismissed as they relate to his alleged misdiagnosis for failure to comply with the TMMA.

Finally, Plaintiff has conceded that § 29-26-122(a) applies to his claims, meaning expert testimony will be required to prove his case. Plaintiff's claim for *res ipsa loquitur* relating to his allegedly negligent colonoscopy must therefore be dismissed as a matter of law. As Judge Campbell explained in *Mayo*, courts have adopted a restricted view of *res ipsa loquitur* claims in medical malpractice cases. 785 F. Supp. 2d at 696 (citing *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999)). Plaintiffs may only rely on *res ipsa* "where the proof is such that the jury can reasonably infer from common knowledge and experience that the defendant was negligent." *Id.* (citing *Seavers*, 9 S.W.3d at 92). Examples of such common knowledge cases include objects left in a patient following surgery or injuries to a body part during surgery on a separate body part. *Id.* at 696 n.3 (citing *Seavers*, 9 S.W.3d at 92). Judge Campbell held that malpractice claims for the potentially-compromised colonoscopies do not fall into the common-knowledge category of malpractice cases where *res ipsa* is appropriate. *Id.* at 696-97. The Court adopts that holding and reaches the same conclusion as to Plaintiff's alleged misdiagnosis. Accordingly, Plaintiff's claim for *res ipsa loquitur* cannot stand.

**IV.** **CONCLUSION**

For the reasons stated above, the United States' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

It is so ORDERED.

Entered this the __19th____ day of October, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT